IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SARAH L. M., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 22 C 4585 |
| ) | |
| MARTIN J. O'MALLEY, ) | Magistrate Judge Finnegan |
| Commissioner of Social Security,[1] ) | |
| ) | |
| Defendant. ) | |

## ORDER

Plaintiff Sarah L. M. seeks to overturn the final decision of the Commissioner of Social Security ("Commissioner") denying her applications for Disability Insurance Benefits, Widow's Insurance Benefits, and Supplemental Security Income under Titles II and XVI of the Social Security Act. The parties consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c), and Plaintiff filed a brief explaining why the Commissioner's decision should be reversed or the case remanded. The Commissioner responded with a competing motion for summary judgment in support of affirming the decision. After careful review of the record and the parties' respective arguments, the Court now grants the Commissioner's motion.

## BACKGROUND

Plaintiff protectively applied for benefits on April 9, 2020, alleging disability since March 3, 2020 due to arthritis of the knees and feet, "hypertension bronchitis," and high blood pressure. (R. 272-88, 300). Born in September 1962, Plaintiff was 58 years old as

---

[1] Martin O'Malley became the Commissioner of Social Security on December 20, 2023. He is automatically substituted as the named defendant pursuant to FED. R. CIV. P. 25(d).

of the alleged disability onset date (R. 272), making her a person of advanced age (age 55 or older). 20 C.F.R. § 404.1563(e); 20 C.F.R. § 416.963(e). She completed high school and lives alone in an apartment. (R. 49, 301). Plaintiff worked as a cashier from 1996 to 2014, then took a housekeeping job in April 2015. She held that position until March 3, 2020, when she was laid off due to the COVID-19 pandemic, though she had been struggling with knee and foot pain before that date. (R. 300-01).

The Social Security Administration denied Plaintiff's applications initially on December 28, 2020, and again upon reconsideration on March 19, 2021. (R. 62-170). Plaintiff filed a timely request for a hearing and appeared before administrative law judge Bill Laskaris (the "ALJ") on October 14, 2021.[2] (R. 37). The ALJ heard testimony from Plaintiff, who was represented by counsel, and from vocational expert Michelle Jahn (the "VE"). (R. 39-61). On November 5, 2021, the ALJ found that Plaintiff's obesity, osteoarthritis of the bilateral knees, and hypertension are severe impairments, but that they do not alone or in combination meet or equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 28-29).

After reviewing the evidence, the ALJ concluded that Plaintiff has the residual functional capacity ("RFC") to perform a reduced range of light work. (R. 29-31). The ALJ accepted the VE's testimony that a person with Plaintiff's background and this RFC could perform Plaintiff's past work as a Cleaner/Housekeeper and Cashier/Checker. (R. 31-32). As a result, the ALJ concluded that Plaintiff was not disabled at any time from the alleged disability onset date through the date of the decision. (R. 32). The Appeals Council denied Plaintiff's request for review on June 23, 2022. (R. 1-6). That decision

---

[2] The hearing was held telephonically due to the COVID-19 pandemic.

stands as the final decision of the Commissioner and is reviewable by this Court under 42 U.S.C. §§ 405(g). *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005); *Whitney v. Astrue*, 889 F. Supp. 2d 1086, 1088 (N.D. Ill. 2012).

In support of her request for reversal or remand, Plaintiff argues that the ALJ: (1) erred in rejecting the opinion from her treating family medicine physician that she can barely sit, stand, walk, lift, and carry; (2) failed to consider pertinent evidence in determining the RFC; and (3) erred in evaluating her subjective statements regarding her symptoms. For reasons discussed in this opinion, the Court finds that the ALJ's decision is supported by substantial evidence.

## DISCUSSION

### A. Standard of Review

A claimant is disabled within the meaning of the Social Security Act if she is unable to perform "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."[3] 20 C.F.R. § 404.1505(a). In determining whether a claimant suffers from a disability, an ALJ must conduct a standard five-step inquiry, which involves analyzing: "(1) whether the claimant is currently employed; (2) whether [the claimant] has a severe impairment or a combination of impairments that is severe; (3) whether [the claimant's] impairments meet or equal any impairments listed as conclusively disabling; (4) whether [the claimant] can perform . . . past work; and (5) whether [the claimant] is capable of performing any work in the national economy." *Gedatus v. Saul*, 994 F.3d 893, 898 (7th Cir. 2021) (citing 20

---

[3] Because the regulations governing DIB and SSI are substantially identical, for ease of reference, only the DIB regulations are cited herein.

C.F.R. § 404.1520(a)-(g)). If the claimant meets her burden of proof at steps one through four, the burden shifts to the Commissioner at step five. *Id.*

In reviewing an ALJ's decision, the Court "will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute [its] judgment for the ALJ's determination so long as substantial evidence supports it." *Warnell v. O'Malley*, 97 F.4th 1050, 1052-53 (7th Cir. 2024) (quoting *Gedatus*, 994 F.3d at 900). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted). "[S]ocial-security adjudicators are subject to only the most minimal of articulation requirements," and ALJs need only provide "an explanation for how the evidence leads to their conclusions that is sufficient to allow us, as a reviewing court, to assess the validity of the agency's ultimate findings and afford [the appellant] meaningful judicial review." *Warnell*, 97 F.4th at 1053-54 (internal quotations omitted) (in "shorthand terms," an ALJ must build a "logical bridge from the evidence to his conclusion."); *Morales v. O'Malley*, 103 F.4th 469, 471 (7th Cir. 2024).

**B.    Analysis**

**1.    Opinion Evidence**

Plaintiff argues that the case must be reversed or remanded because the ALJ erred in discrediting the opinion from her family medicine physician Syeda Shariff, M.D. Since Plaintiff filed her claims in April 2020, the treating source rule used for claims filed before March 27, 2017 does not apply. This means the ALJ was not required to "defer or give any specific evidentiary weight" to any medical opinion, including a treating physician's opinion. 20 C.F.R. § 404.1520c(a). *See also* Social Security Administration,

4

*Revisions to Rules Regarding the Evaluation of Medical Evidence*, 2017 WL 168819 (Jan. 18, 2017). Instead, the ALJ was required to "evaluate the persuasiveness of each medical opinion based on certain factors: (1) supportability; (2) consistency; (3) the medical source's relationship with the claimant; (4) specialization; and (5) other factors, including the source's familiarity with other evidence in the claim or an understanding of Social Security disability policies and requirements." *Michelle D. v. Kijakazi*, No. 21 C 1561, 2022 WL 972280, at *4 (N.D. Ill. Mar. 31, 2022) (citing 20 C.F.R. § 404.1520c(c)(1)-(5)). An ALJ must explain how he considered the first two factors (supportability and consistency) and may but is not required to explain his consideration of the other factors. 20 C.F.R. § 404.1520c(b)(2). "Supportability measures how much the objective medical evidence and supporting explanations presented by a medical source support the opinion." *Michelle D.*, 2022 WL 972280, at *4 (citing 20 C.F.R. § 404.1520c(c)(1)). "Consistency assesses how a medical opinion squares with other evidence in the record." *Id.* (citing 20 C.F.R. § 404.1520c(c)(2)).

On January 26, 2021, Dr. Shariff completed an RFC assessment of Plaintiff indicating that she: can walk less than a block without rest or severe pain; can sit for 45 minutes; can stand for only 10 minutes at a time; can sit, stand, and walk for less than two hours total in an 8-hour workday; must walk around every 10 minutes for 4 minutes; must take unscheduled breaks 5-6 times a day for 15-20 minutes; and can rarely lift less than 10 pounds. (R. 389-90). The ALJ found this opinion not persuasive because it conflicts with the medical evidence of record. (R. 31). The Court sees no error in this analysis.

Plaintiff has been complaining of knee pain since well before the March 3, 2020 alleged disability onset date. In 2018, she had x-rays showing mild to moderate medial compartment osteoarthritis in both knees, and "chronic ossification medial to the left medial tibial plateau." (R. 532). Between February 26, 2019 and August 9, 2021, Plaintiff saw Dr. Shariff seven times for knee pain but exams were generally normal (full range of motion, intact sensation, full muscle strength of 5/5) aside from some swelling and tenderness. (R. 340, 357, 379, 405, 487, 494, 507). Dr. Shariff prescribed tramadol, referred Plaintiff to a rheumatologist, suggested she try local heat, and advised her to eat a low fat diet, lose weight, and exercise regularly. (R. 340, 358, 404, 507). Plaintiff fails to explain how these findings support the extreme restrictions set forth in Dr. Shariff's opinion. *See Pavlicek v. Saul*, 994 F.3d 777, 781 (7th Cir. 2021) (an ALJ may decline to credit a physician's opinion when it is "inconsistent with the physician's treatment notes.").

Other medical evidence similarly contradicts Dr. Shariff's assessment. On September 29, 2020, Plaintiff saw rheumatologist Laarni Quimson, D.O., and reported that she had tried Voltaren gel, tramadol, naproxen, and Tylenol, all without relief of her knee pain. (R. 516). But an exam showed full range of motion in both knees with no crepitus or swelling, and only mild tenderness to palpation. Dr. Quimson assessed knee pain due to osteoarthritis, encouraged Plaintiff to lose weight, recommended Tylenol or ibuprofen for pain, and referred her to physical therapy ("PT"). (R. 30, 521). Plaintiff attended four PT sessions in October and November 2020. She had normal gait and full knee range of motion, and her knee strength increased from 4/5 on October 1, 2020 to 5/5 on November 11, 2020. (R. 536, 542, 544, 546). Nevertheless, Plaintiff reported that the pain was not improving and was discharged from further therapy. (R. 546).

On December 3, 2020, Plaintiff was evaluated by consultative examiner Liana G. Palacci, D.O. Plaintiff was still complaining of pain but the exam was almost entirely unremarkable: full range of motion in the knees and ankles; full strength of 5/5; no edema; ability to tandem walk, walk on heels and toes, squat, and rise; normal neurological exam; normal gait; no difficulty getting on and off the exam table; and ability to walk more than 50 feet without an assistive device. (R. 30, 385-87). Dr. Palacci assessed "[c]omplaints of knee pain with normal range of motion and strength." (R. 30, 387). Finally, on June 24, 2021, Agata Zemla, FNP advised Plaintiff to try ice/heat, compression, leg elevation, stretches, and exercises to help with knee pain. (R. 498). Once again, Plaintiff does not explain how these findings reflect an almost complete inability to sit, stand, walk, or lift. *See Alejandrina A. v. Kijakazi*, No. 20 C 4089, 2023 WL 2539239, at *12 (N.D. Ill. Mar. 16, 2023) (citing *Karr v. Saul*, 989 F.3d 508, 512 (7th Cir. 2021)) (ALJ properly discounted treating physician's statement that was "inconsistent with other objective evidence in the record.").

Further undermining Dr. Shariff's opinion are the assessments from the state agency reviewers who limited Plaintiff to: occasional lifting of 20 pounds; frequent lifting of 10 pounds; sitting, standing, and walking for about six hours in an eight-hour workday; and occasional climbing of ladders, ropes, and scaffolds. (R. 31, 75-76, 115-15, 136-37, 150-52, 164-66). The ALJ found these opinions generally persuasive and supported by the record evidence. Though the ALJ added some additional restrictions (occasional as opposed to frequent climbing of ramps and stairs, occasional as opposed to unlimited crouching and kneeling, and occasional as opposed to frequent crawling), he fairly explained that it was to give Plaintiff's "subjective complaints of pain the maximum benefit

of the doubt, and to fully account for the combined impact of [Plaintiff's] obesity and knee disorder." (R. 31). Any argument that the ALJ ignored Plaintiff's obesity or erred in adopting a more restricted version of the state agency opinions is unfounded. *See Brumbaugh v. Saul*, 850 F. App'x 973, 976 (7th Cir. 2021) (no error in assessing obesity where the ALJ acknowledged the condition and "medical records do not show that [the plaintiff] suffers from any obesity-induced limitations.").

Faced with these overwhelmingly mild to normal findings, Plaintiff nitpicks at the decision to try and find errors. All of her objections fall short. For example, Plaintiff faults the ALJ for failing to expressly mention the PT note indicating that she had 4/5 knee strength and 4-/5 hip strength. As noted, however, Plaintiff's knee strength at the time of discharge was 5/5 and her gait was normal. And though Plaintiff did not achieve all of her PT goals, that is not surprising given that she attended only four sessions. *Kinnari A. v. Saul*, No. 19 C 760, 2020 WL 1863291, at *6 (N.D. Ill. Apr. 14, 2020) (citing *Lanigan v. Berryhill*, 865 F.3d 558, 563 (7th Cir. 2017)) ("[T]he ALJ does not have a duty to explicitly discuss every single piece of evidence in the record as long as he builds a logical connection between the evidence and his conclusion.").

Also unavailing is Plaintiff's contention that the ALJ erred by characterizing her course of treatment as conservative. (R. 30-31). Medication, a short course of PT, topical gels, ice/heat, exercise, and compression are all conservative measures. *See Prill v. Kijakazi*, 23 F.4th 738, 749 (7th Cir. 2022) (ALJ reasonably considered that the plaintiff's treatment, consisting of injections and PT, was conservative). Moreover, Plaintiff is incorrect that her back pain "diagnosis" supports Dr. Shariff's sitting restrictions. Plaintiff complained to Dr. Shariff of back pain on June 18, 2019 (R. 349), and June 9, 2020 (R.

8

377), but she presented with full range of motion and did not continue to raise that as an issue at subsequent appointments. *See Weaver v. Berryhill*, 746 F. App'x 574, 578-79 (7th Cir. 2018) ("[Plaintiff] having been diagnosed with these impairments does not mean they imposed particular restrictions on her ability to work. . . . It was [Plaintiff]'s burden to establish not just the existence of the conditions, but to provide evidence that they support specific limitations affecting her capacity to work.").

Finally, the ALJ reasonably determined that Plaintiff's foot pain cannot explain the significant standing and walking restrictions imposed by Dr. Shariff. Plaintiff saw podiatrist Michael Newkirk, DPM, three times between August 30, 2019 and January 27, 2021. Those exams showed normal range of motion, intact sensation, no swelling, and full muscle strength, and Dr. Newkirk simply recommended orthotics for plantar fasciitis pain. (R. 31, 344-45, 371-72, 398-400). None of these records indicate that Plaintiff is incapable of light work.

Viewing the record as a whole, the ALJ provided valid reasons for discounting the extreme limitations set forth in Dr. Shariff's opinion, and that decision is supported by substantial evidence. *Robert S. v. Kijakazi*, No. 20 C 6286, 2022 WL 45036, at *4 (N.D. Ill. Jan. 5, 2022) ("The substantial evidence standard is a low hurdle to negotiate.").

### 2. RFC

Plaintiff argues that the ALJ still committed reversible error by omitting use of a cane from the RFC. A claimant's RFC is the maximum work that she can perform despite any limitations. 20 C.F.R. § 404.1545(a)(1); SSR 96-8p. "[T]he responsibility for the RFC assessment belongs to the ALJ, not a physician, [but] an ALJ cannot construct his own RFC finding without a proper medical ground and must explain how he has reached his

9

conclusions." *Anna-Marie L. v. Kijakazi*, No. 21 C 50354, 2022 WL 4610120, at *2 (N.D. Ill. Sept. 30, 2022) (quoting *Amey v. Astrue*, No. 09 C 2712, 2012 WL 366522, at *13 (N.D. Ill. Feb. 2, 2012)). A cane only needs to be incorporated into an RFC if it is a medical necessity. *Lohn Eric E. v. Saul*, No. 20 C 2303, 2021 WL 722828, at *2 (N.D. Ill. Feb. 24, 2021).

Plaintiff testified that rheumatologist Dr. Quimson prescribed a cane and she relies on it "a lot" to help with standing and walking. (R. 53-54). Yet as the ALJ observed, there is no mention of a cane or assistive device in Dr. Quimson's treatment notes, or any evidence of a prescription for one. (R. 30, 519-21). Moreover, Dr. Quimson documented full range of motion in the shoulders, elbows, wrists, hips, knees, and ankles, with normal motor strength. Though there was some tenderness to palpation in Plaintiff's knees, Dr. Quimson recommended only PT and Tylenol or ibuprofen. (R. 519, 521). Even Dr. Shariff, whose opinion the ALJ fairly rejected, stated that Plaintiff stands/walks with a cane only "some times." (R. 390). None of this evidence supports Plaintiff's claimed medical need for a cane. *See Jacqueline V. v. O'Malley*, No. 20 C 6272, 2024 WL 1363710, at *5 (N.D. Ill. Mar. 29, 2024) ("To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information.")).

The ALJ also rejected Plaintiff's claimed need for a cane based on Dr. Palacci's December 2020 examination reflecting that Plaintiff had no swelling in the legs, normal range of motion in the knees and ankles, full strength of 5/5, normal gait, normal range of

10

motion in the spine, and an ability to walk more than 50 feet without an assistive device, as well as no problems tandem walking, walking on heels and toes, or squatting and rising. (R. 30, 385-87). Plaintiff speculates that her condition may have worsened after this exam, but subsequent evaluations by Dr. Shariff and Nurse Zemla likewise documented nothing more than some knee swelling and tenderness requiring conservative treatment with tramadol, ibuprofen, exercise, and weight loss. (R. 405, 487-88, 494, 498).

Even assuming the ALJ should have included cane use in the RFC, any such error was harmless. "An error is harmless . . . if we are convinced that the ALJ would reach the same result on remand." *See Lambert v. Berryhill*, 896 F.3d 768, 776 (7th Cir. 2018). The VE testified that Plaintiff can perform her past work as a cashier and cleaner even if she needs to use a cane for ambulation. (R. 58). Plaintiff says she needs a cane to stand as well, but does not offer anything more than her own testimony, along with her opinion that it is "highly unlikely" that she could clean and serve as a cashier while standing with a cane. (Doc. 13, at 11). *See Stojakovic v. Colvin*, No. 14 C 5480, 2015 WL 1966857, at *9 (N.D. Ill. May 1, 2015) (a claimant's "use of a cane is not probative of his actual need for the cane."). Given the contrary medical evidence, the ALJ did not err in discounting this testimony.

Viewing the record as whole, the ALJ did not commit reversible error by declining to include use of a cane in the RFC. Plaintiff's request to remand the case for further consideration of this issue is denied.

### 3. Plaintiff's Subjective Statements

Plaintiff finally seeks remand based on the ALJ's analysis of her subjective statements. In evaluating a claimant's subjective symptom allegations, an ALJ must consider several factors including: the objective medical evidence; the claimant's daily activities; the location, duration, frequency, and intensity of the claimant's pain or other symptoms; precipitating and aggravating factors; type, dosage, effectiveness, and side effects of medication; treatment and other measures besides medication taken to relieve pain or other symptoms; and functional limitations due to pain or other symptoms. 20 C.F.R. § 404.1529(c); SSR 16-3p, 2017 WL 5180304, at *5, 7-8 (Oct. 25, 2017). "'An ALJ need not discuss every detail in the record as it relates to every factor,' but an ALJ may not ignore an entire line of evidence contrary to her ruling." *Benito M. v. Kijakazi*, No. 20 C 5966, 2022 WL 2828741, at *8 (N.D. Ill. July 20, 2022) (quoting *Grotts v. Kijakazi*, 27 F.4th 1273, 1278 (7th Cir. 2022)). "As long as an ALJ gives specific reasons supported by the record, [the Court] will not overturn a credibility determination unless it is patently wrong." *Grotts*, 27 F.4th at 1279; *Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014) (patently wrong "means that the decision lacks any explanation or support."). "Subjective statements by claimants as to pain or other symptoms are not alone conclusive evidence of disability and must be supported by other objective evidence." *Grotts*, 27 F.4th at 1278.

The ALJ provided several valid reasons for discounting Plaintiff's complaints of debilitating limitations. First and foremost, he noted that the medical evidence does not support the alleged severity of Plaintiff's symptoms. (R. 30). As discussed, Plaintiff had some tenderness and swelling in her knees and sporadically complained of foot pain but exams were otherwise largely unremarkable and her course of treatment was

12

conservative in nature. *See Gwendolyn B. v. Saul*, No. 20 C 3244, 2021 WL 1812879, at *8 (N.D. Ill. May 6, 2021) (quoting *Britt v. Berryhill*, 889 F.3d 422, 426 (7th Cir. 2018)) ("[D]iscrepancies between the objective evidence and self-reports may suggest symptom exaggeration."). In addition, Plaintiff attended only four PT sessions and even without injections or other invasive measures, she required nothing more than tramadol, exercise, weight loss, and ice/heat packs. *See Shaw v. O'Malley*, No. 23 C 969, 2024 WL 3395749, at *5 (E.D. Wis. July 11, 2024) (ALJ did not err in concluding that plaintiff's "routine medication and therapy treatments, paired with the lack of more intensive treatment, indicated that his symptoms were not as severe as alleged.").

The ALJ also concluded that Plaintiff's ability to cook, do household chores, shop for groceries with her grandson, and engage in other activities of daily living reflects greater functionality than she alleges. *Alvarado v. Colvin*, 836 F.3d 744, 750 (7th Cir. 2016) ("[I]t is entirely permissible to examine all of the evidence, including a claimant's daily activities, to assess whether testimony about the effects of his impairments was credible or exaggerated."). Contrary to Plaintiff's suggestion, the ALJ did not say these activities demonstrate an ability to work fulltime; he merely observed that they were more robust than would be expected for someone who can barely stand, walk, and lift. *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. April 5, 2019) ("ALJ did not equate Burmester's ability to perform certain activities of daily living with an ability to work full time. Instead, he used her reported activities to assess the credibility of her statements concerning the intensity, persistence, or limiting effects of her symptoms consistent with the applicable rules").

13

Viewing the record as a whole, the ALJ's assessment of Plaintiff's subjective statements regarding pain was not patently wrong and the case need not be remanded for further consideration of that issue.

## **CONCLUSION**

For the reasons stated above, Plaintiff's request to reverse or remand the case is denied, and the Commissioner's motion for summary judgment [19] is granted. The Clerk is directed to enter judgment in favor of the Commissioner.

ENTER:

Dated: December 16, 2024

_____
SHEILA FINNEGAN
United States Magistrate Judge